JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Vernon Tolbert, appeals his conviction on one count of aggravated robbery with one-year and three-year firearm specifications.
 {¶ 2} Appellant was indicted on one count of aggravated robbery, and two counts of kidnapping. All three counts contained both a one-year firearm specification in violation of R.C.2941.141 and a three year firearm specification in violation of R.C. 2941.145.
 {¶ 3} Appellant waived his right to a jury trial and the case proceeded to a bench trial. At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal, which was denied. Appellant presented evidence, and at the conclusion of all the evidence, renewed his Crim.R. 29 motion for acquittal, which was again denied. The court subsequently found appellant guilty of aggravated robbery with one-year and three-year firearm specifications, and not guilty of kidnapping. Appellant was sentenced to three years for the aggravated robbery conviction to be served consecutively to the merged terms for the gun specifications, for a total of six years.
 {¶ 4} At trial, Alex MacFarlane, the victim, testified that he was driving his brother's car, which had a For Sale sign in the window, in the Flats around 10:00 p.m. on the evening in question, when he observed three males. One male, whom he identified as appellant, approached the car and asked how much it was being sold for and whether he had any marijuana. MacFarlane testified that appellant subsequently asked for a ride. MacFarlane said "no" because he was waiting for friends, but appellant entered the car, pulled out a .38 caliber gun and pointed it at MacFarlane's side. Appellant told MacFarlane to drive or he would kill him.
 {¶ 5} MacFarlane testified that while he was driving, a Cutlass Cierra car was following him. When he reached appellant's desired destination, appellant instructed him to pull over, and then took his money, wallet and cigarettes. Appellant then instructed MacFarlane to drive down the street to the next stop sign, and when he arrived there, appellant ordered MacFarlane out of the car. MacFarlane testified that after he got out of the car, a male from the Cutlass got into the car with appellant and appellant drove away.
 {¶ 6} At approximately 1:30 a.m., MacFarlane called the police, who met him at the scene at approximately 1:45 a.m. MacFarlane and the police were unable to locate his car. Later, however, at approximately 4:00 a.m., MacFarlane and his brother went back to the area where MacFarlane was ordered out of the car, and found the car in the area. MacFarlane advised the police that he had located his car and the police subsequently towed the car and processed it for fingerprints.
 {¶ 7} On cross-examination, MacFarlane testified that he encountered appellant sometime after 8:00 p.m., and that appellant was wearing a long, white tee shirt. On redirect examination, however, MacFarlane testified that he told the police appellant was wearing a black shirt with spots.
 {¶ 8} Felicia Wilson, a latent print examiner for the City of Cleveland, testified that a latent print taken from the right rear door of the car belonged to appellant.
 {¶ 9} Cleveland police Detective Carl Hartman investigated the case. He testified that the title to the car driven by MacFarlane, as well as four live .38 caliber rounds, several spent casings from.38 caliber rounds, two of MacFarlane's credit cards and his cell phone, were found inside the Cutlass, which was titled to appellant. No weapon was ever recovered.
 {¶ 10} Appellant testified in his own defense. He denied being in the Flats on the evening in question. Rather, he testified that he was in his neighborhood when he saw MacFarlane at approximately 10:00 p.m. parked in a car. Appellant explained that he observed MacFarlane talking to someone standing outside the car. Appellant then approached the car and the person who had been standing outside the car walked away and told appellant that he could buy drugs from MacFarlane.
 {¶ 11} Appellant asked MacFarlane whether he could buy a small bag of marijuana, and MacFarlane told appellant to get in the car. Appellant testified that he subsequently stepped out of the car and used MacFarlane's cell phone to call a friend for money for the marijuana. Appellant testified that before exiting the car, however, he took a bag of marijuana he saw in the car without paying for it, as well as MacFarlane's credit cards, which were on the front passenger seat.
 {¶ 12} Appellant explained that he had been drinking and was high at the time and that, after he ran away with MacFarlane's belongings, he drove around smoking the marijuana he had taken from MacFarlane. Appellant subsequently woke up in his car and realized that he had been in an accident. He walked to his mother's house and she drove him to the hospital, where he was treated for a head injury.
 {¶ 13} Appellant denied taking MacFarlane's title to his car, taking his car, or having a weapon. He testified that he did not know how .38 shell casings got into his car.
 {¶ 14} In his first assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal.
 {¶ 15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 16} In State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Supreme Court of Ohio stated the following with regard to sufficiency of the evidence:
 {¶ 17} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v.Virginia, [supra]." Id. at 386-387.
 {¶ 18} R.C. 2911.01(A)(1) governs aggravated robbery and provides as follows:
 {¶ 19} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 20} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it[.]"
 {¶ 21} R.C. 2923.11(A) defines deadly weapon as follows:
 {¶ 22} "(A) `Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 23} R.C. 2923.11(B) defines firearm and provides as follows:
 {¶ 24} "(B)(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but can readily be rendered operable.
 {¶ 25} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 26} Appellant contends that the evidence was insufficient to support a finding beyond a reasonable doubt that the firearm was operable. We disagree.
 {¶ 27} According to the Supreme Court of Ohio, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. Thompkins, supra, paragraph one of the syllabus; R.C. 2923.11(B)(2). That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime. State v. Murphy
(1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus.
 {¶ 28} Furthermore, in Thompkins, supra, the Supreme Court of Ohio rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim. Id. at 382. The Thompkins court held that anything that looks like a gun and is brandished is "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Id. at 383. Thus, operability or potential operability may be proven where an individual "brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense." Id. at 384.
 {¶ 29} Here, even though the gun was never recovered, MacFarlane testified that appellant pulled a gun on him. MacFarlane specifically described the weapon as a .38 caliber gun, and explained how appellant pointed the gun at his side and told him to drive or he would kill him. Found in appellant's car, among other items, were four live .38 caliber rounds and several spent casings from .38 caliber rounds. Thus, although there was no direct evidence that the gun was operable, the explicit threats from appellant and the physical evidence found in his car were sufficient under Thompkins to prove that an operable firearm was used during the robbery.
 {¶ 30} Accordingly, appellant's first assignment of error is overruled.
 {¶ 31} In his second assignment of error, appellant maintains that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 32} In determining whether a criminal conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether the fact finder lost its way in resolving conflicting evidence and created such a manifest miscarriage of justice that the conviction must be reversed. Thompkins, supra; State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 33} Appellant advances two arguments as to why his conviction was against the manifest weight of the evidence: 1) the State failed to prove the gun was operable; and 2) MacFarlane's testimony lacked credibility.
 {¶ 34} As already discussed in our ruling upon the first assignment of error, the State presented competent credible evidence that the gun was operable. In regard to MacFarlane's credibility, we do not find MacFarlane's testimony so incredible as to reverse the conviction. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 35} It is important to recognize that this case was a bench trial. "[T]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. In light of the discretionary authority possessed by the trial court in such evidentiary matters and its first-hand ability to observe the witnesses, we cannot find that the trial court lost its way and created a manifest miscarriage of justice. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses * * * is not." Id. at 81.
 {¶ 36} Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Karpinski, J., concur.