JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Demetrius Brown ("defendant"), appeals from his convictions for aggravated burglary with one-and three-year firearm specifications, drug possession, and drug trafficking. For the reasons that follow, we affirm.
 {¶ 2} Defendant waived a jury, and proceeded through a bench trial on an eight-count indictment where the following testimony was adduced:
 {¶ 3} On March 21, 2005, the victim reported to the police that defendant broke into her house brandishing a gun. One of the victim's daughters also testified that defendant was inside the house with a gun that evening. Although defendant left before the police arrived, he spoke with an officer when he called the victim's cellular phone. Over objection, the trial court admitted testimony that defendant was seen on other occasions carrying a weapon.
 {¶ 4} The following day, the victim went to the Justice Center in downtown Cleveland. The victim talked with defendant before leaving downtown and the victim ultimately drove the defendant back to her W. 50th Street residence. Once inside, the victim called 911 and left the phone off the hook. Defendant told the victim that he borrowed money to buy drugs and showed her the drugs, specifically, crack cocaine. The two proceeded to have intercourse and defendant was naked when the police arrived. Police allowed defendant to put on a pair of pants. When police realized defendant was the suspect in the prior night's break in, he was placed under arrest. The victim was alone in the house for 15 seconds before giving police other items of defendant's clothing, including jeans, shoes, and a shirt. Police conducted a pat down search of the clothing and found three bags of suspected crack cocaine.
 {¶ 5} The victim further testified that she and defendant had sold drugs.
 {¶ 6} The victim's daughter testified that defendant did not live at the W. 50th Street residence and did not stay there.
 {¶ 7} The defendant, testifying on his own behalf, stated that he met the victim when he purchased PCP from her father-in-law. According to him, he made a down payment on the W. 50th Street residence and stayed there on occasion. He testified that he and the victim had daily consensual sexual relations between February and March 22,2005. Defendant further maintained that the victim caused criminal charges to be filed against him out of spite because he was having relations with other women. Defendant stated that the victim sells PCP. Defendant continued to testify that on March 21, 2005 he went to W. 50th Street because the victim was angry with him and suspicious of him "messing" with other women. When he arrived, he found the victim in lingerie and entertaining a male visitor. This caused defendant to "brush" the door open and tell the man to get out, which he did. Defendant says the door was "busted in" from a "previous robbery." Defendant denied carrying a weapon on that night. Following these events, defendant claims he broke off his relationship with the victim and discussed a division of the property he had purchased, i.e, car and VCRs.
 {¶ 8} The next day, however, defendant discovered the victim had terminated service on the cellular phone she had given him. He then began "buttering her up" so that she would reinstate service on the phone. The two met downtown where he claims the plan was to go to the phone service provider to turn the phone back on. Instead, they returned to her house with her sleeping daughter. The defendant also described a potential drug transaction between a "Shermane" and the victim that was underway during this time, which he was apparently willing to accompany the victim to accomplish. In defendant's version of events, the victim then discovered his girlfriend's key and got on the phone with someone. Then the two had sex and the victim became angry with him again. The police then arrived and placed him in the squad car. The police began "pulling dope from everywhere," out of his clothes that the victim had brought outside. Defendant denied any knowledge of the presence of the drugs in his clothes and informed the officer that the house was full of drugs. Defendant stated that he instructed the officers specifically where to look for the drugs in the house. The officers arrested him for burglary, felonious assault, and violation of state drug laws.
 {¶ 9} On cross-examination, defendant conceded that he caused the door frame to fall off the door when he entered the victim's residence on March 21st. Defendant also admitted that he has a prior conviction for felony drug possession.
 {¶ 10} The parties stipulated to the SIU lab report finding the substance positive for cocaine and also stipulated to the amount of drugs contained in bags seized from defendant's clothes.
 {¶ 11} Defendant was convicted of aggravated burglary, drug possession, and drug trafficking and was sentenced to nine years in prison with post-release control. Defendant raises five assignments of error for our review.
 {¶ 12} "I. The trial court erred in permitting the State to offer unfairly prejudicial `other acts' testimony in violation of Evidence Rules 403,404, and R.C. 2945.59 and appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 13} Evid. R. 404(B) prohibits the introduction of evidence of other acts to prove the character of a person in order to show that he acted in conformity therewith. See, also, R.C. 2945.59. Evid.R. 402 bars the admission of irrelevant evidence. Evid.R. 403 prohibits the introduction of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury.
 {¶ 14} In this assignment of error, defendant argues that the trial court improperly allowed evidence that defendant had been seen on other occasions carrying a gun. This, he argues, was done by the prosecutor to show that defendant was a violent person and acted in conformity therewith in this case. At trial, the victim did testify that she had seen defendant with guns before March 21st. Another witness simply confirmed that she had also seen defendant with a gun but did not specify when.
 {¶ 15} Arguably, the testimony was irrelevant to the charges against defendant. However, the error, if any, in the admission of this evidence was harmless as there was no reasonable possibility that this testimony contributed to defendant's convictions. In a bench trial, there is a presumption that the court considered only relevant, material, and competent evidence. State v. Bays (1999), 87 Ohio St.3d 15, 27;State v. Larkins (Nov. 10, 1993), Cuyahoga App. Nos. 63760, 63761;State v. Cottrell (Feb. 19, 1987), Cuyahoga App. No. 51576.
 {¶ 16} Even without the objectionable evidence, there is ample testimony that defendant had a gun in his possession when he entered the victim's house on March 21, 2005. Further, carrying a weapon is not necessarily unlawful and cannot, in and of itself, be considered a violent act. In any case, the trial court found defendant not guilty of some of the crimes of violence charged against him, including rape, kidnapping, and a separate count of aggravated burglary. We can find no evidence in the record to show that the bench considered any irrelevant, immaterial, or incompetent evidence in rendering its decision. This assignment of error is overruled.
 {¶ 17} "II. Plain error occurred with the admission of unfairly prejudicial evidence in violation of appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 18} Defendant argues that the trial court committed plain error by allowing testimony that the defendant sold drugs. Defendant also contests the testimony of the victim's daughter who states she saw the defendant hit her mother. The standard for plain error is "but for the error, the outcome of the trial clearly would have been otherwise."State v. McKee (2001), 91 Ohio St.3d 292, 294; State v. Johnson,88 Ohio St.3d 95.
 {¶ 19} Defendant's own testimony is replete with references to his association with drug dealers. Defendant stated he met the victim when he purchased drugs from her father-in-law; that he was well aware of the victim's alleged drug trafficking; that he suggested accompanying the victim on March 22nd to complete a drug transaction with an individual named "Shermane." Defendant also testified that he informed the officers of the presence of drugs in the residence where he was arrested and specifically identified where they could be found. Defendant admitted that the police found the drugs in his clothing although he denied knowledge of its presence. Defendant also confirmed that he has a prior conviction for drug possession.
 {¶ 20} In light of the above-quoted testimony and the presumption that the court, in a bench trial, considers only relevant, material, and competent evidence, this assignment of error is overruled.
 {¶ 21} "III. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to object to unfairly prejudicial evidence."
 {¶ 22} Here, defendant contends that he received ineffective assistance when his attorney did not object to the testimony at issue in his Assignment of Error II, thereby waiving the issue for appellate review save plain error.
 {¶ 23} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there
 {¶ 24} Assuming without deciding that counsel's performance was deficient by not objecting to the select testimony, that did not prejudice defendant to the point of depriving him of a fair trial. As set forth previously, defendant himself provided similar testimony concerning his involvement with illegal drugs and his acrimonious relationship with the victim, including that he broke into the house angry and yelling at the victim's male visitor to leave without his coat or else he was "going down." Defendant elaborated during his testimony that he did not need a weapon because he was a heavyweight boxer who had won all of his fights.
 {¶ 25} Finally, this was a bench trial, which enjoys the presumption that the trial court only considered relevant, material, and competent evidence notwithstanding counsel's failure to object to the subject testimony. This assignment of error is overruled.
 {¶ 26} "IV. Appellant has been deprived of his liberty without due process of law by his convictions for aggravated burglary and firearm specifications, which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 27} Defendant believes there is insufficient evidence to support his convictions for aggravated burglary with firearm specifications. Defendant contends his convictions were based solely upon circumstantial evidence.
 {¶ 28} There is sufficient evidence to support defendant's conviction for the aggravated burglary of March 21, 2005. The victim and her daughter testified that defendant entered their house by force with a gun. Defendant testified that he went inside because he was angry that the victim had a male visitor. During his testimony, defendant stated he did not need a gun because he was a heavyweight boxer for a number of years and implying he could physically accomplish his purpose without a firearm. The victim and her daughter testified that defendant hit the victim with the gun. Accordingly, the evidence, if believed, supports defendant's conviction for aggravated burglary.
 {¶ 29} Defendant also challenges the evidence concerning the presence and/or operability of a firearm as not being supported by the sufficiency of the evidence.
 {¶ 30} The Ohio Supreme Court has held that "[a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at paragraph one of the syllabus; accord State v.Murphy (1990), 49 Ohio St.3d 206 ("The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty * * *. However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime [State v. Gaines (1989),46 Ohio St.3d 65]"); see, also, State v. Tolbert, Cuyahoga App. No. 86246,2006-Ohio-544, ¶¶ 26-29, State v. Jackson, Cuyahoga App. No. 86542,2006-Ohio-1938, ¶¶ 24-27.
 {¶ 31} The victim and her daughter described that defendant was brandishing a handgun. Both testified that he hit the victim and the daughter stated that he hit her with the gun.
 {¶ 32} This Court has recently noted:
 {¶ 33} "`[l]n Thompkins, supra, the Supreme Court of Ohio rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim. Id. at 382. The Thompkins court held that anything that looks like a gun and is brandished is "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Id. at 383. Thus, operability or potential operability may be proven where an individual "brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense." Id. at 384.'" Tolbert, supra, ¶ 28.
 {¶ 34} As was the case in Tolbert, the gun was never recovered here. Nonetheless, the eyewitness' testimony was sufficient to prove that an operable firearm was used by defendant on March 21, 2005. This assignment of error is overruled.
 {¶ 35} "V. Appellant's convictions for aggravated burglary and the firearm enhancement specifications, possession of drugs and drug trafficking were against the manifest weight of the evidence."
 {¶ 36} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins, supra at 390. When a defendant asserts that her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 37} Defendant incorporates his arguments raised under Assignment of Error IV here and also relies on the different versions of events detailed by the victim and the defendant. While the record does reflect significant discrepancies between the defendant's story of what transpired and the victim's account of it, the resolution of the conflict came down to a matter of credibility. The trial court did not "clearly lose its way" in resolving the conflicts and rendering its decision that acquitted defendant on certain counts and convicted him of others. Further, the discrepancies between the victim and her daughter's testimony were irrelevant to determining the presence of the elements of the crimes, i.e., what movie the victim was watching at the time, and whether defendant kept clothes at the W. 50th residence. Accordingly, the convictions were not against the manifest weight of the evidence introduced during the bench trial and this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J., and CHRISTINE T. McMONAGLE, J., CONCUR.