JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} On September 28, 2006, Trennia Hall[1] ("Hall"), was charged with one count of felonious assault, a second degree felony, in violation of R.C. 2903.13. The indictment alleged that Hall, on or about September 26, 2006, "did knowingly cause or attempt to cause physical harm to Jamie Johnson, by means of a deadly weapon or dangerous ordnance, to-wit: knife, as defined in Section 2923.11 of the Revised Code," in Cuyahoga County, Ohio.
 {¶ 2} On January 8, 2007, a final pretrial was held and the case was set for jury trial on February 7, 2007. On February 7, 2007, Hall executed a written jury waiver and the case proceeded to a bench trial. Hall was found not guilty of felonious assault as indicted under R.C.2903.11(A)(2), but guilty of aggravated menacing, R.C. 2903.21, a misdemeanor of the first degree. The court sentenced Hall, without mentioning a specific number of days in the direct sentence, to six months of community control, with the sole, express condition of completing an anger management program.
 {¶ 3} The following evidence was presented at trial.
 Statement of the Facts {¶ 4} On the morning of September 16, 2005, Ms. Jamie Johnson ("Johnson") went to 1005 Way Avenue, Cleveland, Ohio, to visit her friend Tiffany *Page 4 
Bennett ("Bennett") and to drop off documents regarding the enrollment of Bennett's children in a daycare run by Johnson at her home. She testified that, after parking her vehicle, she was approached by Hall who asked her if she had blue hair. Johnson testified that she went into the residence at 1005 Way Avenue and spoke with Bennett about the incident.
 {¶ 5} Johnson testified that she and Bennett went outside and that Bennett and Hall began to argue about a man named "Peanut." Johnson testified that while Bennett and Hall were arguing, she wrote down Hall's license plate number. At that point, Hall walked up to Johnson and began to argue with her. Johnson further testified that Hall had a sharp pointy object hidden up the right sleeve of her shirt and that she poked her with it. (Tr. 21.) Johnson testified that she was trying to hit Hall's hand to dislodge the object and, during the altercation, Hall cut her with what she observed to be a steak knife. Johnson tried to grab the knife and, in doing so, sustained cuts on her hand. Johnson further testified that Hall's father[2] ran out of the house and grabbed Hall trying to pull her back from the scene of the altercation. (Tr. 25.) Johnson stated that she later went to University Hospital for the cuts on her hands and a "puncture wound" on her stomach which she states "didn't break skin. It didn't break like blood." (Tr. 31.) Johnson admitted that "[w]hen she [Hall] slipped on the grass she punctured my stomach." *Page 5 
 {¶ 6} Bennett testified that she was at her aunt's house babysitting at 1005 Way Avenue, when her friend, Johnson, came to visit her. Bennett also testified that she did have blue hair or a blue wig, and that she used to talk to a man named Peanut. She indicated she never saw a knife that day, nor did she see the altercation itself. (Tr. 27.)
 {¶ 7} Mr. Ollie Gardner ("Gardner") testified that he lives at 9917 Way Avenue, and that Hall is his niece, not his daughter. At trial he testified that his niece and two other girls were arguing but not fighting, and that he did not see a knife any time that morning. This testimony varied from his statement to Cleveland Detective Roberson of June 18, 2006, in which, according to the testimony of Detective Roberson, Gardner stated that he broke up the fight between his niece and Johnson, restrained his niece, and that he saw his niece with a knife, which he took away from her. Detective Roberson, a twenty-four-year veteran, testified that he interviewed Hall, Johnson, and Gardner, regarding the incident, and testified regarding discrepancies between Gardner's statement and later testimony.
 {¶ 8} Hall took the stand and testified that, when she was visiting her uncle's house on Way Avenue, she saw Bennett and Johnson pointing at her car. When she quickly came out of her uncle's house, she stated that Johnson's car was in the street, blocking the driver's door of Hall's parked vehicle. Hall testified that she never inquired about "blue hair" and that it was, in fact, Johnson who initiated the *Page 6 
confrontation by telling her to keep away from Peanut, and that Peanut and her friend Bennett were now "an item."
 {¶ 9} She also testified that she did not have a knife, nor does she carry a knife. According to her testimony, it was Johnson who swung at her first, and that she broke her fingernail when grabbing her. Hall testified that she was only protecting herself.
 {¶ 10} During direct examination, counsel for Hall asked if she had been in trouble before. Hall indicated that she had been previously charged with assault but that she pled guilty to disorderly conduct in Cleveland Municipal Court, and that she received a sentence of three- and one-half days in jail. (Tr. 87.)
 {¶ 11} A timely notice of appeal was filed by Hall requesting reversal of her conviction.
 {¶ 12} Hall appeals requesting reversal of her conviction, raising the following four assignments of error:
ASSIGNMENT OF ERROR ONE
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO THE CHARGE WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."
 {¶ 13} Motion for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *." *Page 7 
 {¶ 14} Appellant argues that the evidence was insufficient because the State presented no objective evidence to show that "serious physical harm" was intended to be caused.
 {¶ 15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence at trial to determine in a light most favorable to the State, whether the State presented evidence showing all the elements of the offense of which the defendant was convicted. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781.
 {¶ 16} Hall was found not guilty of felonious assault as charged, but guilty of aggravated menacing, R.C. 2903.21. Aggravated menacing is defined as follows:
 "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.21(A).
 {¶ 17} "Serious physical harm means * * * [any] physical harm that carries a substantial risk of death * * * [any] physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; * * * [any] physical harm that involves some permanent disfigurement or that involves some temporary disfigurement * * *." R.C. 2901.01(5).
 {¶ 18} Hall makes much of the fact that the trial court in announcing its decision stated, "[b]ut I don't find the victim credible." Despite this, there was sufficient evidence in the record indicating that Hall engaged in actions constituting *Page 8 
aggravated menacing. Specifically, there was the testimony that Hall was in possession of a steak knife during the altercation with Johnson. Despite credibility problems with Johnson's testimony in other particulars, the original statement of Gardner to Detective Roberson, closer in time to the incident, corroborated Johnson's testimony regarding this crucial fact. Although Gardner's statement varied from his testimony at trial, the testimony of Detective Roberson regarding this development, which the court did find credible, indicated that Gardner had stated to him that he took a knife from his niece during the altercation and that he was able to do so because of his training while in military service.
 {¶ 19} Furthermore, a reasonable inference could be made by the trier of fact that the pointy object, the steak knife, fits the very definition of deadly weapon, an instrument capable of causing death. This knife which was pointed at Johnson, according to her testimony, causing her to cut her fingers by attempting to knock the steak knife out of Hall's hand, substantiates the court's finding that Hall knowingly caused another [Johnson] to believe that Hall would cause serious physical harm to her. The actions of an individual, attempting to knock a knife out of another's hand, regardless of whether cuts were sustained in doing so, certainly is sufficient evidence to cause one to believe that serious physical harm would be caused to their person.
 {¶ 20} Therefore, we find that the trial court properly denied Hall's motion for acquittal as there was sufficient evidence to support her conviction. *Page 9 
 {¶ 21} Assignment of error one is overruled.
ASSIGNMENT OF ERROR TWO
 "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} Hall claims that the verdict was against the manifest weight of the evidence because there was no objective evidence to indicate any actions on appellant's part that would constitute the offense of aggravated menacing of which she was convicted.
 {¶ 23} In reviewing a claim that a conviction is against the manifest weight of evidence, after weighing all the reasonable inferences, considering the credibility of witnesses and in considering conflicts in the evidence, the conviction cannot be reversed unless it is obvious that the "trier of fact clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 24} Hall claims that there is no evidence linking appellant to "* * * will cause serious physical harm to the person * * *" in this case. For the reasons previously stated above with regard to sufficiency of the evidence, there is evidence linking Hall to causing serious physical harm to the person of Johnson.
 {¶ 25} In stating so, the court is aware that the weight to be given the evidence and the credibility of the witnesses are provinces of the trier of fact. State v. DeHass *Page 10 
(1967), 10 Ohio St. 2d 230, paragraph one of the syllabus. The trier of fact has the authority "to believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill
(1964), 176 Ohio St. 61, 67.
 {¶ 26} Hall's second assignment of error is overruled.
ASSIGNMENT OF ERROR THREE
 "THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF AGGRAVATED MENACING UNDER R.C. 2903.21 AS IT IS NOT A LESSER INCLUDED OFFENSE OR AN INFERIOR DEGREE OF FELONIOUS ASSAULT UNDER R.C. 2903.11
(A)(2)."
 {¶ 27} The State concedes that "aggravated menacing is not a lesser included offense of felonious assault," but argues that it "may constitute a lesser offense for a trier-of-fact as 1) an attempt to commit the crime charged, and 2) an inferior degree of the indicted offense," relying, as did the trial court, on State v. Guddy, Cuyahoga County No. 80390, 2002-Ohio-3102. In the instant case, the trial court found that aggravated menacing was an inferior degree of the indicted offense of felonious assault of R.C. 2903.11(A)(2).
 {¶ 28} The Guddy decision, citing State v. Deem (1988),40 Ohio St. 3d 205, notes that "`a lesser included offense' is but one of three types of offenses included within the overall group of lesser offenses. An offense is an `inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." Id. at paragraph 13. *Page 11 
 {¶ 29} The original indictment was brought under the second section of the felonious assault statute, R.C. 2903.11 (A)(2), which provides that "no person shall knowingly * * * cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance" as defined in R.C. 2923.11.
 {¶ 30} R.C. 2923.11(A) defines deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." R.C. 2923.11(K) sets forth a list of devices in (K)(1) — (6), falling within the category of "dangerous ordnance," whose commonality is the capability of causing death, the ultimate serious physical harm.
 {¶ 31} In the case sub judice, despite appellant's arguments to the contrary, the elements of aggravated menacing and felonious assault do, in fact, overlap as they did in Guddy for the following elements: first, "knowingly" was present in the original indictment and the conviction charge of aggravated menacing; the second overlapping element of "serious physical harm" was present by virtue of an examination of the definitions of "deadly weapon" and "ordnance" set forth in the second section of the felonious assault statute.
 {¶ 32} There is no violation of appellant's constitutional rights as contended by Hall given the facts presented to the grand jury in her case involved the essential facts of her brandishing a deadly weapon capable of causing serious physical harm. *Page 12 
As stated by this court in State v. Robertson, Cuyahoga County App. No. 80910, 2002-Ohio-6814:
 Section 10, Article I, of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury * * * We have held that this provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause. State v. Vitale (1994), 96 Ohio App.3d 695." (Emphasis added.)
 {¶ 33} Appellant argues that aggravated menacing contains "serious" in regard to physical harm, while the word "serious" is not contained in the indicted section of felonious assault. This is not true, as the concept of "serious" is contained in the definition of deadly weapon. The facts presented to the grand jury involved the appellant's possession of a deadly weapon, to wit, a steak knife, which is an instrument, device, or thing capable of inflicting death, and of course, serious physical harm.
 {¶ 34} For the foregoing reasons, this assignment of error is overruled.
ASSIGNMENT OF ERROR FOUR
 {¶ 35} The court will first address the fourth assignment of error which reads as follows:
 "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE 1, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS WHEN COUNSEL INQUIRED ABOUT APPELLANT'S *Page 13 
PRIOR CONVICTION FOR A MISDEMEANOR WHICH WOULD HAVE BEEN OTHERWISE INADMISSIBLE."
 {¶ 36} Hall submits that she received ineffective assistance when her attorney did not object to the testimony at issue in her fourth assignment of error.
 {¶ 37} As recently stated by this court in State v. DemetriusBrown, Cuyahoga App. No. 87947, 2007-Ohio-287, in order to reverse a conviction on the grounds of being denied effective assistance of counsel, we must find:
 "(1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687 * * *. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus." Id. at paragraph 23.
 {¶ 38} This court has further held that to establish prejudice "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph 23, quoting Bradley, supra, paragraph two of the syllabus.
 {¶ 39} Assuming arguendo that counsel's performance was deficient by eliciting Hall's testimony regarding the circumstances of her disorderly conduct conviction, this testimony did not prejudice defendant to the point of depriving her of a fair trial. The record demonstrates that there was an acrimonious relationship between Hall and Bennett and Johnson. Gardner indicated that there was trouble with these two before, and he also told Detective Roberson on June 18, 2006, that *Page 14 
his niece had a knife on her, and that he in fact was successful in taking it away from her, given his training with weapons while in military service.
 {¶ 40} While her attorney's solicitation of evidence regarding her prior misdemeanor conviction might have had prejudicial impact in a jury trial, such testimony was heard in a bench trial, "which enjoys the presumption that the trial court only considered relevant, material, and competent evidence." Id. at paragraph 25.
 {¶ 41} Given the evidence in the record and the presumption that the trial court in a bench trial considers only relevant, material and competent evidence, this assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 15 
JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR
[1] This court notes that the correct spelling of Ms. Hall's first name is Tranea. See Transcript at page 4 and Defendant's Waiver of Jury Trial dated February 7, 2007.
[2] Later testimony identifies this person as Hall's uncle, Ollie Gardner. *Page 1