JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Isaac Hunter appeals his conviction for aggravated robbery. Hunter assigns the following errors for our review:
 "I. Appellant was deprived of his liberty without due process of law, where his conviction for aggravated robbery is contrary to the manifest weight of the evidence."
 "II. The trial court violated appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 5 of the Ohio Constitution because it failed to ascertain whether Mr. Hunter's waiver of his right to a jury trial was knowing, intelligent and voluntary."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On June 1, 2006, the Cuyahoga County Grand Jury indicted Hunter on two counts of aggravated robbery. Hunter pleaded not guilty at his arraignment, after which several pre-trials were conducted.
 {¶ 4} On August 8, 2006, Hunter reached a plea agreement with the State of Ohio. Pursuant to the agreement, the State of Ohio amended count one of the indictment to a charge of robbery and dismissed the second count. Hunter then pleaded guilty to the amended charge.
 {¶ 5} However, approximately thirty-five minutes later, Hunter motioned the court to withdraw his guilty plea. The trial court granted Hunter's motion and the State of Ohio reinstated the original charges. The trial court referred Hunter to the Court Psychiatric Clinic to determine: "Psychiatric factors in the crime; psychiatric *Page 4 
recommendations regarding case disposition; eligibility for mentally disordered offender; and eligibility for mentally retarded offender."[1] The trial court's journal entry referred to Hunter's psychotic disorder and his intellectual function below an I.Q. level of 75.
 {¶ 6} On October 25, 2006, after the trial court called the case for trial and the jury had been empaneled, but before they were sworn, Hunter executed a jury waiver. Thereafter, a bench trial commenced.
 Bench Trial {¶ 7} The victim, a waiter, testified that after leaving work on May 20, 2006, he proceeded to the Tool Shed, a bar located in Ohio City, to attend an AIDS benefit. The victim testified that he took a taxi cab to the Tool Shed. The victim testified that when the cab driver overshot the Tool Shed by about a block, he decided to walk back to the bar.
 {¶ 8} The victim testified that while walking towards the Tool Shed, he was accosted from behind by an individual who held him around the neck and stated: "Don't f*** with me, I'll cut you." The victim testified that he felt a cold metal object, which he believed to be a knife, behind his neck. The assailant ordered the victim to hand over everything he had. The victim testified that he gave the assailant ten dollars, which was the change from the cab ride, as well as a pack of cigarettes. *Page 5 
 {¶ 9} The victim testified that after the assailant released him, he hurried towards the Tool Shed, but when he looked behind him, he could see the perpetrator peering from around the corner of an adjacent building. The victim testified he was able to view the perpetrator, who he described as a black male, wearing a puffy jacket and cargo pants with a lot of zippers. The victim ran into the Tool Shed, told the bartender he had been robbed and asked him to call the police.
 {¶ 10} Cleveland police officer, Dymphna O'Neill, testified that on the night of May 20, 2006, in response to a report of an aggravated robbery, she and her partner were dispatched to the vicinity of West 29th and Church Streets in Cleveland, Ohio. Officer O'Neill testified that as they were proceeding down Church Street en route to the scene of the robbery, she observed a man standing by the road gesturing excitedly. The man was wearing dark clothing and a puffy jacket as described by dispatch.
 {¶ 11} Officer O'Neill testified that they approached the individual, patted him down, and tried to ascertain his identity. The individual, who was not carrying identification, indicated that his name was Alonzo Turner.[2] Officer O'Neill testified that they placed the individual into the police car and almost immediately, the victim approached the police cruiser screaming: "I've been robbed, I've been robbed." *Page 6 
 {¶ 12} Officer O'Neill testified that when the victim saw the man in the back of the cruiser, he immediately stated: "That's him, that's him." Officer O'Neill testified that the victim indicated that the individual had taken ten dollars and a pack of cigarettes from him. Officer O'Neill testified that the victim urged them to check the individual's pocket for the ten dollars and cigarettes. Officer O'Neill recovered the ten dollars and cigarettes from the individual's pocket. Officer O'Neill testified that the individual denied committing the robbery and stated it was the victim's words against his.
 {¶ 13} At trial, Hunter, who took the stand in his own defense, testified that he was a chronic drug user and had suffered a massive head injury in 1995, which left him in a coma for several months. Hunter also testified that he was bisexual and enjoyed engaging in anonymous sexual encounters with men. Hunter testified that although he often was paid for his efforts, he never asked for money.
 {¶ 14} Hunter testified that on the night of May 20, 2006, he was strolling the neighborhood surrounding the Tool Shed, a bar frequented by gay men, when he encounter the victim. Hunter testified that he invited the victim to engage in a tryst and the victim agreed, but said he only had ten dollars. Hunter testified that they walked to a more secluded area where the two engaged in oral sex. Hunter testified that during the encounter, the victim's cigarettes fell out of his pocket and Hunter decided to keep them. *Page 7 
 {¶ 15} Hunter testified that after the encounter, they returned to the street and separated. Hunter testified that the victim proceeded to the Tool Shed, at which time he heard the victim say "Call the police."
 {¶ 16} The trial court found Hunter guilty of both counts. On November 29, 2006, following a presentence investigation report and another psychiatric evaluation, the trial court sentenced Hunter to a prison term of three years. The trial court also imposed five years of postrelease control.
 Manifest Weight {¶ 17} In the first assigned error, Hunter argues his convictions for aggravated robbery were against the manifest weight of the evidence. We disagree.
 {¶ 18} In State v. Wilson,[3] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that *Page 8 sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 19} R.C. 2911.01(A)(1) governs aggravated robbery and provides as follows:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it [.]" *Page 9 
 {¶ 20} R.C. 2923.11(A) defines deadly weapon as follows:
 "(A) `Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 21} In the instant case, Hunter contends that the evidence does not establish that a deadly weapon was used. We are not persuaded.
 {¶ 22} The victim testified that Hunter came up behind him, placed a cold metal object to his neck and threatened to cut him if the victim did not hand over everything in his pockets. The victim further testified that although he did not see a knife, he believed the cold metal object to be a knife because Hunter threatened to cut him.
 {¶ 23} Here, despite the victim not seeing a knife and despite that a knife was never recovered, in committing the theft offense, Hunter indicated that he possessed an instrument that he was willing to use to cut the victim. This, coupled with the cold metal sensation the victim felt on his neck, would lead the average person to conclude that Hunter had a knife on or about his person when he committed the theft offense.
 {¶ 24} The weight of the evidence and the credibility of the witnesses are issues primarily for the trier of the facts.[4] In addition, it is important to recognize that this case was a bench trial. The trial judge is best able to view the witnesses and observe *Page 10 
their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.[5]
 {¶ 25} In light of the discretionary authority possessed by the trial court in such evidentiary matters and its first-hand ability to observe the witnesses, we cannot find that the trial court lost its way and created a manifest miscarriage of justice. We conclude, on the record before us, Hunter's convictions were not against the manifest weight of the evidence. Accordingly, we overrule the first assigned error.
 Jury Waiver {¶ 26} In the second assigned error, Hunter argues the trial court failed to ascertain whether he knowingly waived his right to a jury trial. We disagree.
 {¶ 27} In Ohio, a defendant may waive his right to trial by jury.[6]
To be valid, a waiver must meet five conditions. It must be 1) in writing, 2) signed by the defendant, 3) filed, 4) made part of the record, and 5) made in open court.[7] Absent strict compliance with these requirements, a trial court lacks jurisdiction to try the defendant without a jury.[8] *Page 11 
 {¶ 28} A review of the record indicates that the trial court complied with the statutory requirements, as outlined above, for a valid jury waiver. Nonetheless, Hunter contends that given his lengthy history of mental disability, the trial court erred in accepting the jury waiver. We are not persuaded.
 {¶ 29} In the instant case, after the jury had been empaneled, but before being sworn, Hunter, through his attorney, indicated that he was waiving his right to a jury trial. Thereafter, the following discussion took place:
 "Mr. Sidoti: *** At the table here he indicated to me through several minutes of discussion that he wishes at this time to waive a jury and try this case to the bench. Is that correct, sir?
 "Mr. Hunter: Yes.
 The Court: Mr. Hunter, that's your wish at this point in time?
 Mr. Hunter: Yes, your Honor.
 "***
 "The Court: *** Mr. Sidoti, I'm going to hand you a waiver of jury
 trial. If you would read that along with your client and have him sign it and we'll take that for the record. (Pause) The Court has been present as Mr. Hunter has signed the voluntary waiver of jury trial and order. The Court will file and docket this. Understand very clearly, Mr. Hunter, once we begin with opening statements, jeopardy- *Page 12 
 "Mr. Hunter: Yes, I understand.
 "The Court: That's it. Jeopardy has attached.
 "Mr. Hunter: Yes, ma'am. Yes, your Honor."[9]
 {¶ 30} Hunter claims the above discussion was insufficient to determine whether he knowingly waived a jury trial. However, there is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel.[10] While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so.[11]
 {¶ 31} Here, Hunter signed the waiver in open court, after consultation with counsel. No additional colloquy was needed to reaffirm that his waiver was knowing, intelligent and voluntary.[12] Moreover, the trial court was well aware of Hunter's mental challenges. The record indicates that after Hunter withdrew his guilty plea within *Page 13 
thirty-five minutes of entering it, the trial court referred Hunter for a psychiatric evaluation.
 {¶ 32} The record indicates that the psychiatric evaluation was completed on September 21, 2006. Prior to the evaluation, the clinician informed Hunter of the nature and objective of the evaluation. Hunter read the report and demon-strated to the clinician that he understood the non-confidential nature of the evaluation. Hunter signed the Client Rights form and proceeded with the evaluation.
 {¶ 33} As part of the psychiatric evaluation, the clinic administered the Wechsler Abbreviated Scale of Intelligence ("WASI") test. Hunter obtained a score of 75 on the WASI test. Based on Hunter's I.Q. score, the clinician determined that Hunter met the criteria for borderline intellectual functioning with respect to measured intelligence. At the time of the evaluation, based on Hunter's WASI test score of 75, the clinician concluded that Hunter, if granted probation, did not meet the criteria for supervision under the Mentally Disabled Offender or Mentally Retarded Offender programs.
 {¶ 34} Further, prior to referring Hunter for psychiatric evaluation, the trial court had a lengthy discussion with Hunter to determine his understanding of the trial proceedings. Consequently, when the above allegedly brief, albeit sufficient, subsequent discussion is viewed in conjunction with the record as a whole, we *Page 14 
conclude that despite Hunter's mental challenges, he validly waived his right to a jury trial. Accordingly, we overrule the second assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] Journal Entry, August 9, 2006.
[2] He was later correctly identified as Isaac Hunter.
[3] 113 Ohio St.3d 382, 2007-Ohio-2202.
[4] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[5] State v. Tolbert, Cuyahoga App. No. 86246, 2006-Ohio-544, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[6] Crim.R. 23(A).
[7] State v. Henderson, Cuyahoga App. No. 89377, 2008-Ohio-1631, citing State v. Lomax, 114 Ohio St.3d 350, 2007-Ohio-4277, at ¶ 9.
[8] State v. Ford, Cuyahoga App. Nos. 79441 and 79442, 2002-Ohio-1100, citing State v. Pless, 74 Ohio St.3d 333, 1996-Ohio-102, paragraph one of the syllabus.
[9] Tr. at 80-82.
[10] State v. Ricks, Cuyahoga App. No. 84500, 2004-Ohio-6913. See, also, State v. Morris (1982), 8 Ohio App.3d 12, 14.
[11] State v. Jells (1990), 53 Ohio St.3d 22, 25-26; see, also,State v. Spivey (1998), 81 Ohio St.3d 405, 408.
[12] State v. Currie (Mar. 13, 1997), Cuyahoga App. No. 70022. *Page 1