[Cite as *State v. Tye*, 2022-Ohio-2869.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111174 |
| v. | : | |
| DESHAWN D. TYE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 18, 2022

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-15-601956-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Kraft, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Deshawn D. Tye ("Tye") appeals his convictions and asks this court to vacate the convictions and remand to the trial court for a new trial. We affirm.

{¶ 2} After a jury trial, Tye was found guilty of six counts of aggravated robbery, first-degree felonies, in violation of R.C. 2911.01(A)(1); one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2); one count of failure to comply, a third-degree felony, in violation of R.C. 2921.331(B); four counts of having a weapon while under a disability, third-degree felonies, in violation of R.C. 2923.13(A)(2); and three counts of robbery, a second-degree felony, in violation of R.C. 2911.02(A)(2). Tye was sentenced to an aggregate total of 19 years' imprisonment.

## I. Facts and Procedural History

{¶ 3} On November 24, 2015, Terry Pulliam ("Pulliam"), a pizza delivery driver was making a delivery, when a man who identified himself as Shawn, pulled out a 9 mm firearm and told Pulliam to give him the pizza and $20. After Pulliam complied, Shawn jumped into a "blu-ish," four-door Chevy Taurus with a spoiler on the back, per Pulliam's description. Pulliam describe Shawn as a black man, who weighed between 190 and 200 pounds, 5'10" in height, with a tattoo under his left eye, and "peach fuzz" on his face. (Tr. 450.) During trial, Pulliam identified Tye as the man who robbed him. Pulliam also previously identified Tye during a photo lineup at the police station with 80 percent confidence.

{¶ 4} On December 2, 2015, William Maughan ("Maughan"), a pizza delivery driver, was making a delivery to a nursing home. When Maughan arrived at the nursing home, he called the man who ordered the pizza, and the man

instructed Maughan to a door. Upon arriving at the door, the man came outside, and while waving a 9 mm firearm, instructed Maughan to give him money. Maughan complied and gave the man $23 and a sandwich. The man then demanded Maughan's wallet, and again, Maughan complied. After which, Maughan returned to his vehicle and called his employer who notified the police. Maughan testified that the man referred to himself as Shawn on the order and described Shawn as a stocky, black man, wearing black clothes, and appeared to weigh approximately 195 pounds.

{¶ 5} On December 5, 2015, Aaron Putnam ("Putnam"), a pizza delivery driver was making a delivery at an apartment building. When Putnam arrived, he called the man who made the order. Putnam walked to the door to make the delivery, a man walked up to him and asked how much for the pizza. When Putnam replied, the man pulled a gun and pointed it at Putnam. Putnam gave his cash and the pizza to the man. Putnam described the man as African-American, wearing a hood with a tattoo on his neck. Later, at the police station, Putnam identified Tye as the man who robbed him during a photo lineup, with 100 percent confidence.

{¶ 6} After Putnam reported the incident to the police, Officer Brian Ondercin ("Officer Ondercin") of the Cleveland Heights Police Department, called the number of the customer who ordered the pizza and left a message on the voicemail. Officer Ondercin received a call back from a man who said "hello," and then hung up. On December 6, 2015, Officer Christopher Skok requested that the

phone company track the phone, which was tracked to an apartment complex. The police learned that a Nissan was parked at the complex, but when they arrived, the Nissan was gone. Later on, the police saw a vehicle matching the description of the Nissan driving on Lorain Avenue. The police followed the vehicle into a car wash and attempted to box-in the vehicle. However, the driver was able to leave the area, scraping the driver side of the vehicle as he fled the scene. Later that day, the Nissan was recovered in Cleveland Heights.

{¶ 7} On December 7, 2015, Detectives Andrew Ziska ("Det. Ziska"), Josef Burghardt, and Michael Krane learned the whereabouts of the tracked cell phone. Detectives approached the area, looking for the Taurus, based on the previous description given by Pulliam. Detectives found the car near a junkyard and flagged down a Cleveland Metropolitan Housing Authority ("CMHA") police officer to approach the vehicle. Once the CMHA officer activated his lights and sirens, the suspect drove off in the car. The detectives and the officer followed the car, until it came to a stop. Once stopped, the passenger, later identified as Arneisha Holmes ("Holmes") and Tye's girlfriend, exited the vehicle. The driver, later identified as Tye, exited from the driver's side, holding a gun, and started running towards the detectives.

{¶ 8} Det. Ziska fired his weapon at Tye, but Tye kept running trying to locate a vehicle to take. Tye attempted to take a tan vehicle from a woman, but was unsuccessful. He approached another car, dragged the driver, Amanda Harris

("Harris") out by gunpoint and began driving the car towards the detectives while pointing his gun at them. The detectives and the CMHA officer began shooting at Tye. Det. Ziska attempted to shoot the tires of the vehicle while it drove by him. They were unable to stop the vehicle or apprehend Tye.

{¶ 9} Shortly thereafter, Herbert Austin ("Austin") was at a gas station when he heard a loud noise. Austin observed a car driving with a flat tire and bullet holes in the door. The driver, later identified as Tye, got out of the car and demanded that Austin give him his car. Austin complied and Tye took the car.

{¶ 10} Around the same time, Holmes received a call from Tye asking her where she was located. Tye pulled up in the car he took from Austin, and the two drove towards Erie, Pennsylvania to the hospital, in order to treat Tye's bullet wound. Tye and Holmes went to Mill Creek Community Hospital, who notified the police of the gunshot wound. Officer Brandon Heynes ("Officer Heynes") responded to the call. Officer Heynes spoke to Tye, and Tye stated that his name was Michael Jenkins. He told Officer Heynes that he was assisting his sister, Holmes, with moving from Euclid, Ohio to Erie, Pennsylvania when he was shot. Neither Tye nor Holmes provided any details about where the incident took place.

{¶ 11} Officer Heynes contacted the Euclid Police Department and was transferred to the Cleveland Police Department. Officer Heynes detained Tye and Holmes, and after searching Holmes's purse, found several sets of car keys, cell phones, narcotics, Tye's I.D., and credit and debit cards, including Maughan's visa

debit card. Officer Heynes received the description of Austin's car and located it in the parking lot of the hospital. Upon inspection of the car, Officer Heynes observed blood in the car and a semiautomatic handgun. The car was towed back to Cleveland, and Tye was arrested.

{¶ 12} After Tye's arrest, his DNA was matched with DNA found on the steering wheels and car doors of three separate vehicles. Tye's DNA was also found on the gun located in Austin's car that was determined to be operable by the police. Tye's fingerprints were also found in the Nissan.

{¶ 13} On January 15, 2016, a Cuyahoga County Grand Jury indicted Tye on 34 counts, as follows:

| Count | Offense | Degree | Revised Code | Specification (yrs.) |
|-------|---------|--------|--------------|----------------------|
| 1 | Attempted Murder | F1 | 2923.02 and 2903.02(A) | 1, 3, and 7 |
| 2 | Attempted Murder | F1 | 2923.02 and 2903.02(A) | 1, 3, and 7 |
| 3 | Attempted Murder | F1 | 2923.02 and 2903.02(A) | 1, 3, and 7 |
| 4 | Attempted Murder | F1 | 2923.02 and 2903.02(A) | 1, 3, and 7 |
| 5 | Felonious Assault | F2 | 2903.11(A)(2) | 1 |
| 6 | Felonious Assault | F2 | 2903.11(A)(2) | 1 |
| 7 | Felonious Assault | F2 | 2903.11(A)(2) | 1 |
| 8 | Felonious Assault | F2 | 2903.11(A)(2) | 1 |
| 9 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 10 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 11 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 12 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |

| Count | Offense | Degree | Revised Code | Specification (yrs.) |
|---|---|---|---|---|
| 13 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 14 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 15 | Failure to Comply | F3 | 2921.331(B) | 1 |
| 16 | Having a Weapon while Under a Disability | F3 | 2923.13(A)(2) | |
| 17 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 18 | Robbery | F2 | 2911.02(A)(2) | 1 and 3 |
| 19 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 20 | Having a Weapon while Under a Disability | F3 | 2923.13(A)(2) | |
| 21 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 22 | Robbery | F2 | 2911.02(A)(2) | 1 and 3 |
| 23 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 24 | Having a Weapon while Under a Disability | F3 | 2923.13(A)(2) | |
| 25 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 26 | Robbery | F2 | 2911.02(A)(2) | 1 and 3 |
| 27 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 28 | Having a Weapon while Under a Disability | F3 | 2923.13(A)(2) | |
| 29 | Aggravated Robbery | F1 | 2911.01(A)(1) | 1 and 3 |
| 30 | Robbery | F2 | 2911.02(A)(2) | 1 and 3 |
| 31 | Kidnapping | F1 | 2905.01(A)(2) | 1 and 3 |
| 32 | Having a Weapon while Under a Disability | F3 | 2923.13(A)(2) | |
| 33 | Obstructing Justice | F3 | 2921.32(A)(2) | 1 |
| 34 | Receiving Stolen Property | F5 | 2913.51(A) | 1 |

{¶ 14} At trial, after the state presented its case and rested, the trial court dismissed Counts 1-4 and 17-19 of the indictment. Tye made a motion for acquittal concerning the remaining counts, and the trial court denied his motion. Tye did not call any witnesses. The jury found Tye guilty of Counts 9, 11-13, 15, 16, 21, 22, 24-26, 28-29, 30, and 32. After the sentencing hearing, Tye was sentenced to 19 years' imprisonment.[1] Tye filed this appeal and assigned two errors for our review:

    I. Appellant's convictions were unsupported by sufficient evidence; and

    II. Appellant's convictions were against the manifest weight of the evidence.

## II. Sufficiency and Manifest Weight of the Evidence

### A. Standard of Review

{¶ 15} As stated in *State v. Roan*, 8th Dist. Cuyahoga No. 108917, 2020-Ohio-5179, ¶ 12:

> The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court, to determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could find that the state presented evidence to prove each of the material elements of the offense beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 17, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

---

[1] Tye was also sentenced in two unrelated cases, Cuyahoga C.P. No. CR-16-595172 and Cuyahoga C.P. No. CR-16-599499, which were resolved via guilty pleas and were to be served concurrently with the present case. These cases are not subject to this appeal.

{¶ 16} "A sufficiency analysis is different from that undertaken in determining whether a conviction is against the manifest weight of the evidence." *Id.* at ¶ 13, citing *Thompkins* at paragraph two of the syllabus.

> In considering a manifest-weight claim, the appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Id.,* quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} "The criminal manifest weight-of-the-evidence standard addresses the evidence's effect of inducing belief." *Roan* at ¶ 14, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's?" *Id.,* citing *Wilson* at *id.* "Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence." *Id.,* citing *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 723 N.E.2d 1054 (2000). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." *Id.,* citing *Wilson* at id. "Additionally, in a case tried by a

jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence." *Id.*, citing *Thompkins* at 389.

## B. Law and Analysis

{¶ 18} In Tye's first assignment of error, he argues that his convictions were unsupported by sufficient evidence. Specifically, he contends that the pizza robberies and the weapons while under disability convictions were not supported by sufficient evidence because the state did not prove, in accordance with R.C. 2911.01(A)(1), that Tye had an operable firearm because no firearm was recovered. R.C. 2911.01(A)(1) states,

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> > (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

He cites our decision in *State v. Robinson*, 8th Dist. Cuyahoga No. 101850, 2015-Ohio-1838, to support his contentions that the victims' testimonies about Tye's use of a firearm are insufficient to sustain convictions for robbery, having a weapon while under a disability, and the firearm specifications.

{¶ 19} In *Robinson*, this court stated, "[w]here no shots are fired and the firearm is not recovered, such as in the instant case, circumstantial evidence, including the representations and actions of the person in possession of the gun, are of crucial importance, when we evaluate the evidence of a firearm's operability." *Id.*

at ¶ 25, citing *State v. Fulton*, 8th Dist. Cuyahoga No. 96156, 2011-Ohio-4259, ¶ 34. The victims in *Robinson* testified

> that they heard a noise from the gun, which was described by the cashier as "cocking" and by the assistant manager as a loud clapping sound. They both saw Robinson pull a black gun out, and the assistant manager testified that the gun was pointed at her throughout the entire incident. When Robinson had the employees take him to the back of the store, he threatened to shoot the cashier when he felt the cashier was moving too fast.

*Id*. at ¶ 26.

**{¶ 20}** As a result of this testimony, this court reasoned that "Robinson's words and actions during the robbery, as testified to by the witnesses, implied that his gun was operable. As such, the state presented sufficient, albeit circumstantial, evidence upon which a reasonable jury could find the gun used in the robbery was operable." *Id*. at ¶ 27.

**{¶ 21}** Tye argues that the victims' testimonies from this instant case do not demonstrate that the gun he used to rob them was operable. Tye contends that none of the three robbery victims testified that Tye threatened to shoot them with the firearm or that they were afraid he would shoot them. However, Tye's arguments are misplaced. As we stated in *State v. Martin*, 8th Dist. Cuyahoga No. 108996, 2021-Ohio-1096, "'[P]roof of operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of the firearm by the defendant and the implicit threat to shoot.'" *Id*. at ¶16, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 78961, 2001 Ohio App. LEXIS 4474 (Oct. 4, 2001).

{¶ 22} This court has held that "[t]he word 'brandish' means to 'wave or exhibit in a menacing or challenging manner.'" *State v. Hills*, 8th Dist. Cuyahoga No. 98848, 2013-Ohio-2902, ¶ 16, quoting *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 30. Pulliam testified that Tye pulled out a 9 mm firearm and told Pulliam to give him the pizza and $20. Maughan testified that Tye waved a 9 mm firearm and instructed Maughan to give him money. Maughan also testified that he was scared enough by the incident that he wanted to quit his job. He also stated that he did not feel as if he could leave the area because Tye was going to shoot him even though he gave Tye "the stuff." (Tr. 800.) Putnam testified that Tye pulled a gun, pointed it at him, and demanded money. All three of the victims' testimonies demonstrate that Tye brandished a firearm and after brandishing the firearm, the victims complied with Tye's demands. Thus, there is sufficient evidence that the firearm used in the robberies was operable. Additionally, R.C. 2923.13(A)(2), states:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

After review of the record and our determination that the gun was operable, we find there was sufficient evidence to convict Tye of having a weapon while under a disability.

{¶ 23} In viewing the evidence in a light most favorable to the prosecution, we determine that the jury could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 24} Additionally, in Tye's first assignment of error, he argues that there is insufficient evidence to convict him on Count 11, where he was found guilty of robbing Harris of her vehicle in an attempt to flee from the police. Tye argues that Harris did not testify during trial and that Detective Raymond Diaz ("Det. Diaz") of the Cleveland Police Department, during his trial testimony, mentioned that she was the owner of the vehicle. Tye argues that because there was no evidence presented at trial that Harris owned the vehicle, his conviction for this count should be vacated. At trial, Det. Diaz testified that one of the vehicles Tye took belonged to Harris. (Tr. 770.) The state properly entered into evidence Harris's vehicle identification number and confirmed that the vehicle was owned by Harris. Harris also gave a video-recorded statement to the police where she indicated that Tye fired his weapon while taking her vehicle. (Tr. 1032, 1073.)

{¶ 25} Tye, however, cites no case law to support his contention that the lack of Harris's testimony constitutes insufficiency of the evidence. Harris signed a statement stating that Tye fired his weapon at police officers, stole her car at gunpoint while she was in the driver seat, and drove off from the location. However,

pursuant to App.R. 12(A)(2), we overrule this portion of Tye's assignment of error for failure to cite case law or statutes in support of an argument, as required by App.R. 16(A)(7). *See State v. Johnstone*, 8th Dist. Cuyahoga No. 92885, 2010-Ohio-1854*, ¶ 32; Perk v. Tomorrows Home Solutions*, 8th Dist. Cuyahoga No. 107012, 2019-Ohio-103, ¶ 17; *In re Guardianship of Williams*, 8th Dist. Cuyahoga No. 110781, 2022-Ohio-617, ¶ 26.

{¶ 26} Therefore, Tye's first assignment of error is overruled.

{¶ 27} In Tye's second assignment of error, he argues that his convictions for the aggravated robberies of the pizza delivery victims and the related weapons while under disability convictions were unsupported by credible, persuasive evidence. Tye contends that even if the evidence was sufficient to prove that he robbed the pizza delivery drivers, the identification evidence was not persuasive. "Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's?" *Roan*, 8th Dist. Cuyahoga No. 108917, 2020-Ohio-5179, at ¶ 14, citing *Wilson* at ¶ 25.

{¶ 28} Tye argues that the victims' physical description of him was not persuasive to demonstrate that Tye was the person who robbed each of the victims. Pulliam described Tye as a black man, who weighed between 190 and 200 pounds, 5'10" in height, with a tattoo under his left eye, and "peach fuzz" on his face. Maughan described Tye as a stocky, black man, wearing black clothes, and appeared

to weigh approximately 195 pounds. Putnam described Tye as African-American, wearing a hood with a tattoo on his neck.

{¶ 29} During Pulliam's interview with the police, he identified Tye in a photo lineup with 8 out 10 confidence. However, at trial, when he observed Tye in person, Pulliam identified Tye as the man who robbed him. (Tr. 457.) Putnam identified Tye during a photo lineup with 100 percent confidence. Additionally, the descriptions given by all three men were consistent with each other. There was no conflicting testimony in the identification of Tye.

{¶ 30} Tye also argued that the jury lost its way in determining that the gun was operable to sustain a conviction for aggravated robbery and having a weapon while under a disability. As previously stated, Tye brandished a gun during all three of the pizza delivery robberies and during the robbery of Harris. Mere brandishing is enough to prove operability. *See State v. Brown*, 8th Dist. Cuyahoga No. 87947, 2007-Ohio-287, ¶ 33, quoting *Thompkins*, 78 Ohio St.3d at 384, 678 N.E.2d 541 ("operability or potential operability may be proven where an individual 'brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense.'").

{¶ 31} After a review of the record, weighing the evidence and all reasonable inferences considering the credibility of the witnesses, we determine that the jury did not lose its way. A manifest miscarriage of justice was not created. The victims' identification of Tye was consistent and supported by the weight of the evidence.

{¶ 32} Therefore, Tye's second assignment of error is overruled.

**{¶ 33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK DANIEL CELEBREZZE, III, J., and
MARY EILEEN KILBANE, J., CONCUR