[Cite as *State v. Quinones-Torres*, 2024-Ohio-844.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,           :

                                                  No. 112339

    v.                            :

FRANCISCO QUINONES-TORRES,    :

    Defendant-Appellant.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 7, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-669141-B

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jordan Mason, Assistant Prosecuting Attorney, *for appellee*.

John E. Jackson, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Francisco Quinones-Torres ("Quinones-Torres") appeals his convictions for felonious assault and other charges. For the reasons that follow, we affirm.

## Factual and Procedural History

{¶ 2} On April 5, 2022, a grand jury convened and indicted Quinones-Torres for kidnapping, a felony of the first degree (Count 1); abduction, a felony of the third degree (Count 2); two counts of felonious assault, felonies of the second degree (Counts 3 and 4); and two counts of having weapons while under disability, felonies of the third degree (Counts 5 and 6).[1] Counts 1-4 contained one-year and three-year firearm specifications. Counts 1, 3, and 4, also contained repeat violent offender ("RVO") and notice of prior conviction ("NPC") specifications.

{¶ 3} Prior to trial, Quinones-Torres signed a jury waiver for the RVO and NPC specifications. His counsel did not waive the jury for the weapons while under disability charges. Counsel expressed on the record that because his client's prior convictions were elements of the offenses, the charges could not be bifurcated, and therefore had to be tried by the jury. The parties subsequently stipulated to the authenticity and admission of Quinones-Torres' prior convictions for drug possession and felonious assault. State's exhibits Nos. 52 and 53.

{¶ 4} The jury trial commenced on November 28, 2022. The testimony revealed that in the early morning hours of February 28, 2022, Cleveland police officers were called to the area of Bradwell Avenue on the report of a shooting. They were informed that a female was shot and possibly in the basement of a home;

---

[1] In the original indictment, Wanda Cruz was indicted in Counts 1 and 2 with kidnapping and abduction, respectively, and appellant's charges were Counts 3 through 8. The trial court later renumbered the charges after Cruz pleaded to a reduced charge. For ease of reference, we have numbered the counts as reflected in the judgment of conviction.

however, they only had the street not the number of the home. By way of knocking on doors, Officer Hector Vazquez made contact with Wanda Cruz ("Cruz") who informed him that the female K.W. had gone to the hospital. Officer Vazquez speaks Spanish fluently and spoke to Cruz in that language. Officer Vazquez obtained permission to search the home. He found a shell casing in the basement as well as what appeared to be blood. Officer Vazquez spoke to Quinones-Torres over the phone, also in Spanish. Quinones-Torres first told Officer Vazquez that he was in Lorain, then spontaneously told him he was going to turn himself in the following morning. Quinones-Torres claimed that he was dropped off in Lorain and that his mother's Jeep should be parked at her home.

{¶ 5} K.W. met Quinones-Torres a month prior to the incident at a gas station at West 25th Street and Bradwell Avenue. They became close rather quickly and saw each other almost every day. They usually met at the home Quinones-Torres shared with his mother, Cruz, on Bradwell Avenue. On the day before the incident, K.W. and Quinones-Torres met at 6:00 p.m. They ran errands, while Cruz did laundry, and later the two smoked some marijuana.

{¶ 6} Around 2:30 a.m., K.W. asked Quinones-Torres to take her home. He became angry and accused her of stealing from him. Quinones-Torres called someone on the phone but spoke in Spanish, which K.W. did not understand. Nevertheless, she felt like something bad was going to happen. Quinones-Torres took K.W.'s bookbag and emptied its contents onto the floor. At that point, K.W. decided to go upstairs and get Cruz. She turned around when she heard Quinones-

Torres come up behind her and saw that he had his gun pointed at her. She smacked it away from her and Quinones-Torres pulled the trigger. She heard the bullet hit the wall but did not realize initially that it had hit her first. The bullet entered near her belly button and exited her right side.

{¶ 7} K.W. turned and went upstairs. Quinones-Torres followed her and got her a cup of water. K.W. remembered seeing him with the gun upstairs, though she could not recall if he had it the whole time or if he had gone downstairs to get it at some point. (Tr. 168-169.) K.W. attempted to leave but either Quinones-Torres or Cruz stopped her. When she tried to call her stepfather, Quinones-Torres took her phone. Eventually, Quinones-Torres obtained the keys to Cruz's Jeep and drove K.W. to the hospital. Quinones-Torres also gave K.W. her phone back. She secretly called 911 and placed the phone in her pocket. Video from MetroHealth Hospital shows Quinones-Torres dropping off K.W. in the Jeep.

{¶ 8} After deliberations, the jury found Quinones-Torres guilty of abduction and the associated gun specifications (Count 2); guilty of two counts of felonious assault and the associated gun specifications (Counts 3 and 4); and guilty of two counts of weapons while under disability (Counts 5 and 6). The jury found Quinones-Torres not guilty of the kidnapping charge (Count 1). The trial court found Quinones-Torres guilty of the RVO and NPC specifications associated with Counts 3 and 4.

{¶ 9} The trial court sentenced Quinones-Torres to an aggregate term of 9 to 10 ½ years. Quinones-Torres appeals assigning the following errors for our review.

The trial court violated appellant's right to due process of law by finding him guilty of abduction without sufficient evidence.

**Assignment of Error No. 2**

Appellant's convictions were against the manifest weight of the evidence.

**Assignment of Error No. 3**

Appellant was denied effective assistance of counsel when trial counsel failed to bifurcate and try the having weapons while under disability charges to the trial court.

**Law and Argument**

{¶ 10} For ease of analysis, we will address the assignments of error out of order, beginning with the third assignment of error. Quinones-Torres argues that he received ineffective assistance of counsel when his lawyer failed to bifurcate the weapons while under disability charges effectively placing his prior bad acts in the form of prior convictions before the jury.

{¶ 11} Ineffective assistance of counsel is established when a defendant demonstrates that (1) counsel's performance fell below an objective standard of reasonable representation and (2) he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Courts considering whether an attorney's performance fell below an objective standard of reasonableness, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. A defendant establishes prejudice by showing that "there exists

a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10. A party must establish both prongs of the test. Failure to prove one prong makes consideration of the other prong unnecessary. *State v. Morgan*, 8th Dist. Cuyahoga No. 105682, 2018-Ohio-1834, ¶ 11.

{¶ 12} Quinones-Torres' trial counsel indicated that the weapons while under disability charge could not be bifurcated and that was the reason that it had to be tried before the jury. On appeal, Quinones-Torres has not cited any case law to establish that this decision was in error. Additionally, because there are no citations to case law it is unclear whether Quinones-Torres is claiming that the error was, as the state argues in its response, a failure to waive the jury on the weapons while under disability charges, or whether the error was arguing that the prior convictions could not be "bifurcated" from the weapons while under disability charge and tried to the court.

{¶ 13} The discussion between the trial court and defense counsel leads this court to believe they were discussing whether an element of the offense, i.e., the prior conviction, could be bifurcated and tried to the court, while the remainder of the offense was tried to the jury.

> Court: Let me just indicate for the record, there's no way to bifurcate the weapons disability thing, correct? In other words, there is a reference to a prior conviction in that count.
>
> Defense: Correct, your honor.
>
> * * *

Court: There's no way to bifurcate that or try that to the Court? It's an element of the offense, right?

Defense: Correct?

Court: So the jury will be made aware that he has a prior conviction.

Defense: Correct.

(Tr. 15.)

{¶ 14} Regardless, because Quinones-Torres has not cited case law to support his argument that his trial counsel's decision was in error, we are unable to review the argument. A court of appeals may disregard any assigned error that is unsupported by citation to caselaw or statutes. *State v. Tye*, 8th Dist. Cuyahoga No. 111174, 2022-Ohio-2869, ¶ 25, citing App.R. 12(A)(2) and 16(A)(7).

{¶ 15} Therefore, the third assignment of error is overruled.

{¶ 16} In the first assignment of error, Quinones-Torres argues that there was insufficient evidence to support his conviction for abduction. He argues that there was insufficient evidence that he forced or threatened K.W., preventing her from leaving the residence.

{¶ 17} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). It involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We must look at the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The question is not " 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

{¶ 18} Abduction requires a showing that the accused, without privilege to do so, knowingly, by force or threat, restrained the liberty of the victim under circumstances that created a risk of physical harm to her or placed her in fear. R.C. 2905.02(A)(2). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A)(1). A "threat" is not defined in the code, but Black's Law Dictionary defines it as "a communicated intent to inflict harm or loss on another or on another's property, especially one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied of an intent to inflict loss or pain on another." *Black's Law Dictionary* (11th Ed. 2019).

{¶ 19} After she was shot, K.W. went upstairs and tried to leave. Quinones-Torres moved in front of her, blocked her access to the door, and told her not to go. He then went downstairs but told his mother to watch K.W. When he left, K.W. tried to leave again, managed to unlock and open the side door, but his mother pushed it

closed. Although K.W. was unclear whether Quinones-Torres had the gun the entire time, he had it when he came back upstairs. When K.W. tried to call her stepfather, Quinones-Torres took her phone. While this was happening, K.W. testified that the blood from her wound was "flowing heavily." K.W. estimated that 20-30 minutes passed before Quinones-Torres drove her to the hospital.

{¶ 20} Looking at the evidence in a light most favorable to the prosecution, a jury could reasonably conclude that Quinones-Torres actions after he shot K.W. established both force and threat. Quinones-Torres shot K.W. over an alleged theft. Consequently, any action he took to prevent her from leaving would seem threatening. Blocking the door and taking her phone, while carrying the gun for all or most of the incident would signal to K.W. that she was not free to leave. Accordingly, there was sufficient evidence as to the elements of force or threat. Accordingly, the first assignment of error is overruled.

{¶ 21} Finally, in the second assignment of error, Quinones-Torres argues that his convictions were not supported by the manifest weight of the evidence.

{¶ 22} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. As the reviewing court, a decision to reverse a conviction based on the weight of the evidence stems from this court sitting as the

"thirteenth juror" who "disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must consider all of the evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} Quinones-Torres points to several contradictions and inconsistencies in K.W.'s testimony and suggests that they establish a lack of credibility. Notably, none of these inconsistencies or contradictions are regarding the shooting itself.

K.W. mistook the date of the offense.

K.W. testified that she told the police the gun was a Smith and Wesson, but the detective testified she did not identify the type of gun.

K.W. stated at one point that Quinones-Torres gave her a hoodie before they left the house, then later testified that he gave it to her in the car.

K.W. testified that the Jeep was gold while officers testified it was gray.

Det. Krakowski testified K.W. told her mother she was hit by a stray bullet, but K.W. did not remember making that statement.

{¶ 24} None of these contradictions is so egregious as to call into question K.W.'s veracity. She testified about an incident that happened almost nine months prior to trial. The jury could have noted all these contradictions and still found K.W.

was credible when she testified that Quinones-Torres shot her in his basement. Her testimony regarding the shooting was simple and straightforward. The other testimony does not lead this court to doubt the veracity of that testimony.

{¶ 25} Quinones-Torres also questions whether K.W. had drugs in her possession. A black cosmetics bag was found in K.W.'s backpack at the scene. K.W. admitted ownership of the backpack but denied owning the black cosmetic bag. The cosmetics bag contained makeup items that K.W. admitted were hers. It also contained a spoon, a vial, and a shell casing, which K.W. denied were hers. The spoon, vial, and shell casing were never tested. Quinones-Torres suggests K.W. was using drugs. The suggestion that K.W. was using drugs is speculative. The jury could have assigned the cosmetic bag and its contents no probative value because the evidence presented gave it no value.

{¶ 26} Quinones-Torres also takes issue with K.W.'s testimony that she heard a bullet hit the wall, yet no impact strike was found nor was a bullet found. The state's witnesses countered that testimony with testimony stating that an impact strike is not always found and neither is a bullet. The jury could have found that testimony credible.

{¶ 27} Finally, Quinones-Torres argues that the police failed to properly investigate the case because they did not follow up on text messages between K.W. and Quinones-Torres' niece and mother; canvas the neighborhood to determine if anyone heard a gunshot; never tested the blood that was found for DNA; and failed to recognize there was not enough blood at the scene given how K.W. said she was

shot. Again, the evidentiary value of this evidence is speculative. Quinones-Torres could have obtained the text messages from his family members if they were truly relevant. The relevance of whether a neighbor heard a gunshot would depend on whether they were awake at 2:30 a.m., and whether a gunshot could have been heard outside of the home. It is speculative to suggest that a canvas would have yielded results. The defense could have requested that the state test the blood. Whether the blood would have splattered is also speculative.

{¶ 28} Based on the foregoing, we cannot say that the jury lost its way or created a manifest injustice when it found Quinones-Torres guilty. The convictions were supported by the greater weight of credible evidence. Accordingly, the second assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR